ccc

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PATRICE CARUTHERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 05 C 2869 |
| EVANSTON NORTHWESTERN HEALTHCARE | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff in this action, Patrice Caruthers ("Caruthers"), has brought a two-count complaint arising out of her termination against defendant, Evanston Northwestern Healthcare Corporation ("ENH"), for violation of her rights under the Family and Medical Leave Act (the "FMLA"). ENH is an Illinois corporation engaged in managed healthcare. Caruthers worked at ENH as a referral coordinator. Her duties as a referral coordinator included verifying insurance eligibility and benefits for patients, processing referrals, and tracking insurance authorizations. Throughout Caruthers' employment at ENH, ENH maintained a no-fault attendance and punctuality policy (the "attendance policy"), which was published in the ENH employee handbook provided to Caruthers at the start of her employment. The parties do not dispute that for purposes of the attendance policy, an "occurrence" includes an unexcused absence or three tardies. According to the policy, an

1

employee is eligible to be terminated upon the accrual of eight occurrences in a 12-month period. Specifically, the ENH handbook reads:

**ATTENDANCE AND PUNCTUALITY POLICY**

Good attendance and timely arrival are essential for every position at Evanston Northwestern Healthcare (ENH). If you are unable to report to work, you must call your supervisor or the person designated by your supervisor within the timeframes defined by your department. Indicate the reason for the absence and the expected duration and continue to call in each day unless instructed by your supervisor to do differently.

Any occurrence of tardiness (3 tardies equal 1 occurrence), absenteeism, or failure to notify a supervisor during the first 90 days of employment may result in termination.

**Absenteeism**

Excessive absenteeism will result in corrective action as follows:

- Five (four)* occurrences in a rolling 12-month period - level one corrective action
- Six (five)* occurrences in a rolling 12-month period - level two corrective action
- Seven (six)* occurrences in a rolling 12-month period - final warning
- Eight (seven)* occurrences in a rolling 12-month period - termination

*() - standard for employees scheduled to work less than 64 hours per pay period.

Two consecutive "no call/no shows" or two separate occurrences of "no call/no shows" in a rolling 12-month period will be considered job abandonment. Absences due to the Family and Medical Leave Act (FMLA), VESSA, jury duty, military, or other legally required leaves are not considered occurrences.

**Punctuality**

Three occurrences of tardiness in a rolling 12-month period are equivalent to one unscheduled occurrence of absenteeism.

Caruthers' documented attendance problems began in 2002. On February 14, 2002, Caruthers received a Level One Corrective Action due to her accrual of five unexcused absences in the preceding 12-month period. On April 22, 2004, Caruthers received her first Level Two Corrective Action from one of her supervisors at the time, Bridgette Sullivan ("Sullivan"), for a number of occurrences accrued between February 2 and April 18 of that year. Around this time, Caruthers discussed the cause of her attendance problems with Sullivan. Caruthers stated that her own illnesses, her mother's poor health and subsequent death, and her granddaughter's hospitalization had all contributed to her absenteeism. Caruthers stated that she gave as "little detail as [she] could" about her health problems because she considered the topic a personal matter between her and her physician. Caruthers recalls discussing with Sullivan the possibility of taking FMLA leave at some point in early 2004, but Caruthers did not request FMLA leave at that juncture.

In the summer of 2004, Sullivan left ENH and Sandra Orlowski ("Orlowski") and Patricia Hollander ("Hollander") became Caruthers' supervisors. Caruthers' attendance problems continued. On August 30, 2004 Orlowski had a meeting with Caruthers regarding

her attendance problems during which Caruthers received a second Level Two Corrective Action for a series of occurrences accrued between May 19 and August 24 of that year. Caruthers had already accrued thirteen occurrences for the calendar year of 2004 and Orlowski advised Caruthers that further attendance violations could result in termination. At the meeting, Caruthers told Orlowski that her attendance problems were caused by medical illness. At that point, Orlowski informed Caruthers that she may be eligible for FMLA leave and provided her with an FMLA request form. On September 7, 2004, Caruthers received her first Final Warning from Orlowski for an unexcused absence on August 31, 2004.

Caruthers faxed the completed FMLA leave request form to ENH on September 3, 2004. In the form, Caruthers requested intermittent leave in the form of ten 1-2 day leave periods per year. On September 21, Caruthers received an email from ENH explaining that in order to evaluate her request, she would need to submit a medical certification of a serious health condition from a physician substantiating her need for leave by October 5, 2004. That same day, Caruthers' physician, Dr. Meredith Belber ("Dr. Belber"), submitted Caruthers' medical certification. On the form, Dr. Belber identified Caruthers' condition as an "undiagnosed neurological syndrome."[1]

---

[1] The record now shows that Caruthers is diagnosed with severe migraine headaches and facial paralysis.

4

On September 22, 2004, ENH sent a letter to Caruthers informing her that it had not approved her leave request because Dr. Belber had failed to check a box on the medical certification indicating that it would be necessary for Caruthers to take intermittent leave and had also failed to specify the number of leave periods per year Caruthers would require due to her condition. In the letter, ENH gave Caruthers the opportunity to resubmit her request with a revised medical certification.

On September 27, 2004, Dr. Belber submitted a revised certification form indicating that Caruthers would require intermittent leave consisting of 10-15 leave periods of 1-2 days per year. From the record, it appears that Caruthers' FMLA request was approved shortly thereafter. ENH did not, however, inform Caruthers of its approval until after her termination, approximately one month later.

On October 8, 2004, Caruthers received a second Final Warning from Orlowski as a result of an unreported absence on October 1. Caruthers received the corrective action because she had failed to comply with ENH policy by not calling in to the office on October 1 to alert her supervisor that she would be absent that day.[2] On

---

[2] Printouts from ENH's timekeeping system show that a number of Caruthers' absences in September and October (including this October 1 absence) were coded in the system as both FMLA days and, alternatively, as either sick or vacation days. Orlowksi's deposition testimony explains that these dates were coded with this dual designation pending notification of the approval or denial of Caruthers' FMLA request. In the case that Caruthers'

October 28, 2004, Caruthers received her last Corrective Action from ENH. Caruthers was terminated for tardies accrued between September 1 and October 28 of that year.

Caruthers appealed her termination to the Vice President of Human Resources at ENH, Bridget Sheridan ("Sheridan). In a meeting with Sheridan regarding her appeal, Caruthers insisted that she had called in on October 1 and therefore had unfairly received a corrective action for what was deemed an unreported absence. Sheridan told Caruthers that, if she could demonstrate through phone records that she had in fact called in her absence that day, she would be reinstated. Caruthers was not able to produce evidence of this phone call (nor did Sheridan locate any evidence of this phone call in her own search of ENH's phone records). Thus, having found Caruthers' termination to be justified by her

_____

request was approved, these days would count as FMLA days. In the case that her request was denied, these days would count against her sick or vacation pay. In this case, since Caruthers' request was approved, these days were all FMLA days. It would appear, however, that since notification of the approval of Caruthers' request was never communicated to Caruthers or her supervisor, the secondary designation was never removed from the system. This failure to update the system is immaterial to the resolution of this case, however, because Caruthers does not claim that she was improperly disciplined for her *absence* on any of these specific days. The only discipline Caruthers received related to any of these absences is the failure to report her October 1 absence. Caruthers does not argue that her obligation to report her absence by phone under the attendance policy was changed by the fact that October 1 was considered an FMLA day or that her failure to report an absence does not warrant a corrective action. As will be discussed, *infra*, Caruthers did at one point contend that she had in fact reported her absence on October 1, but she has abandoned that argument.

history of absenteeism, Sheridan upheld her termination.

Thereafter, Caruthers filed a two-count complaint against ENH for violation of her rights under the FMLA. ENH has filed a motion for summary judgment on all claims.[3] Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

I.

Under the FMLA, eligible employees are entitled to twelve weeks unpaid leave per year for various reasons, including a

---

[3] Additionally, ENH filed a motion to strike Caruthers' response to its statement of material facts and Caruthers' statement of additional facts for violations of Local Rule 56.1. In reaching a decision, I did not rely on any of the statements called into question by ENH's motion. Therefore, ENH's motion to strike is denied as moot.

"serious health condition" rendering the employee unable to perform her job. *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). Leave may be taken continuously or on an intermittent basis. 29 USCS § 2612(b). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "In addition to the substantive guarantees contemplated by the Act, the FMLA also affords employees protection in the event they are discriminated against for exercising their rights under the Act." *King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir. 1999). In this case, Caruthers has brought both a discrimination and a substantive claim against ENH.

## II.

I turn first to Caruthers' discrimination claim. Caruthers alleges that ENH terminated her in retaliation for her exercise of her rights under the FMLA. In an FMLA claim for retaliatory discharge, the employee has the burden of showing intentional discrimination by the employer. *Id.* at 892. Claims of retaliatory discharge under the FMLA are analyzed in the same manner as retaliatory discharge claims under other employment statutes (e.g., Title VII). *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Accordingly, Caruthers may proceed under either the direct or indirect method of proof. *Id.* Under the direct method, Caruthers may introduce either direct evidence, which is

8

essentially an admission by the decision-maker that her actions were motivated by the prohibited animus, or circumstantial evidence from which a fact-finder could infer intentional discrimination. *Id.* Alternatively, under the indirect method, Caruthers may:

> [S]how that after [engaging in protected conduct] only [she], and not any similarly situated employee who did not [engage in protected conduct], was subjected to an adverse employment action even though [she] was performing [her] job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

*Id.* at 503 (quoting *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002)).

Under the direct method, Caruthers has presented no direct evidence of discrimination. Furthermore, the evidence in the record could not reasonably be viewed as a "convincing mosaic" of circumstantial evidence from which a reasonable fact-finder could infer discrimination. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). Caruthers' sole argument in support of this claim is that Orlowski's stated reason for her termination, which was the accumulation of tardies between September and October 2004, is inconsistent with Sheridan's resolution of her appeal, which (in Caruthers' opinion) made her October 1 unreported absence the stated reason for her termination. In Caruthers' own words:

> Defendant's decision to use Plaintiff's October 1, 2004 absence as the reason for her termination is pretext. Defendant was looking for a reason to terminate Plaintiff

that would appear unrelated to the FMLA once Sheridan realized that the tardiness for which Orlowski terminated Plaintiff, was . . . caused by her FMLA illness.

Caruthers' argument, however, does not accurately characterize Sheridan's testimony and the events in question. Nothing in the record challenges Sheridan's assertion that Caruthers' tardiness was a violation of ENH's attendance policy warranting a corrective action (in this case termination). The record only shows that Sheridan gave Caruthers the chance to demonstrate that Orlowski's second final warning was issued in error by showing that she had in fact called in on October 1 to report her absence. Thus, Sheridan was allowing Caruthers to challenge any of the disciplinary actions that had led up and contributed to her termination. Sheridan's actions did not amount to changing the reason for the termination as Caruthers asserts.

Caruthers' claim also fails under the indirect method. Under the indirect method, "failure to satisfy any element of the *prima facie* case proves fatal to the employee's retaliation claim." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). In her response, Caruthers does not even attempt to establish a *prima facie* case and has not brought forth evidence that would be necessary for Caruthers to meet her burden. For example, Caruthers does not argue or point to any evidence that similarly situated employees who did not take FMLA leave were not subject to the same adverse actions as Caruthers. Accordingly, Caruthers' claim under

10

the indirect method necessarily fails. *Id.; Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006) (holding that a failure to provide evidence of similarly situated employees receiving more favorable treatment is fatal to an employee's claim under the indirect method). I grant ENH's motion for summary judgment on this claim.

III.

Turning to the substantive FMLA claim, "when an employee alleges a deprivation of these substantive guarantees, the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave." *King*, 166 F.3d at 891. Unlike Caruthers' FMLA discrimination claim, ENH's intent is irrelevant to the analysis of her substantive claim. *Id.*

In arguing her claim, Caruthers only challenges the October 28 corrective action for tardiness which directly led to her termination. Caruthers argues that ENH interfered with her right to take FMLA leave by failing to inform her (until after her termination) that her FMLA request had been approved on September 27. According to Caruthers, at the time she accrued the tardies:

> [she] was concerned . . . about taking any more sick days from work until her FMLA [sic] for intermittent leave could be approved. Since she did not know her request for FMLA leave was approved, she struggled to get to work on days she was too ill to be there which resulted in her being tardy. Orlowski then relied on this tardiness as a reason to terminate.

There is evidence throughout the record that, if taken in the

light most favorable to Caruthers, supports this theory. In addition to Caruthers' own testimony, Sheridan testified that during her appeal, Caruthers informed her that she had not heard back from ENH regarding her FMLA request. Sheridan also testified that it was ENH's policy for Employee Health Services to contact both the employee and the employee's supervisor in written form in order to communicate that an FMLA request had been approved. There is no evidence in the record that ENH ever sent any written communication to either Caruthers or her supervisor(s). Orlowksi, who was one of Caruthers' supervisors at the time, testified that she also was never informed of the approval of the FMLA request. Additionally, the record supports Caruthers' contention that she was suffering from her FMLA illness on the days she was tardy. In addition to her own testimony, Dr. Belber's affidavit states that Caruthers' tardiness on the days in question was in fact due to her FMLA illness.[4]  Furthermore, the record does not contain any

---

[4] It is not necessarily inconsistent that Caruthers was suffering her FMLA illness and still was able to go to work (albeit late) on these days. The FMLA requires that an employee suffer from "a serious health condition that makes the employee unable to perform the functions of the position of such employee" in order to qualify or leave. § 2612 (a)(1)(D). Caruthers mere presence at work on the days does not indicate that she was actually capable of performing the functions of the job; she could have been present but incapable of working - the record is silent on this issue. *See Hawkins v. First Union Corp. Long-Term Disability Plan,* 326 F.3d 914, 918 (7th Cir. 2003) (stating in the disability context that there is not an inherent inconsistency between working and being qualified for disability because "[a] desperate person might force himself to work despite an illness that everyone agreed was totally disabling.").

12

explanation as to why ENH did not inform Caruthers of the approval of her request or that such a delay was reasonable or necessary. Nor does the record contain any evidence that would indicate that ENH informed Caruthers that she could provisionally take FMLA days off pending the approval of her application.[5]

ENH first argues that Caruthers has waived this theory of interference because it is not found in Caruthers' complaint. I disagree. "A plaintiff . . . need not plead or specifically identify the legal basis for a claim; she is only required to plead facts that would support a cause of action." *Dodaro v. Village of Glendale Heights*, 2003 U.S. Dist. LEXIS 5056, at *26 (N.D. Ill. 2003). Caruthers' complaint states that her "[t]ermination occurred while her request for FMLA leave was pending." ENH's failure to notify her of the approval was also discussed in testimony provided by multiple deponents in this case. Accordingly, ENH had sufficient notice of the facts underlying Caruthers' theory of interference.

ENH's substantive response to this clam is that "ENH cannot be

---

[5] The record does show that Caruthers continued to take a number of days off pending notification of the approval of her request. *See* footnote 2, *supra*. This behavior is not, however, inconsistent with the fact that Caruthers was never informed of the fact that she could provisionally take days off pending a decision on her FMLA request. Nothing indicates Caruthers was aware of how these days were being recorded in the timekeeping system and it is equally plausible that Caruthers took these days off believing she was using her accrued sick and vacation leave (the amount of which is not stated in the record).

held accountable for disciplining Plaintiff for her chronic tardiness because plaintiff did not provide information to support a claimed need to be tardy because of an FMLA serious health condition." This argument, however, does not actually address Caruthers' theory of interference. Caruthers is not arguing that her FMLA request included the right to be tardy to work, but rather that, had she been informed of the approval of her FMLA request, she would have taken FMLA days (as she was entitled to do) on those days.

Neither party has cited any authority that discusses an FMLA interference claim premised upon a post-approval failure to notify by an employer.[6] The FMLA regulations do elaborate on the meaning of interference within the FMLA. 29 CFR § 825.220. Section 825.220 states that "'[i]nterfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to

---

[6] The only case discussing a similar situation that I have located is an unpublished opinion from the Sixth Circuit. *George v. Russell Stover Candies, Inc.*, 106 Fed. Appx. 946 (6th Cir. 2004). In *George*, the court suggested that if an employer failed to notify an employee of the approval of her request for intermittent or reduced leave, the employee would not be prevented from taking leave necessitated by her medical condition. *Id.* at 957. The court held, however, that because the plaintiff had admitted that her tardiness had not been due to an FMLA illness, she could not succeed on her claim. *Id.* Unlike the present situation, in *George*, the court was clear that the plaintiff would not have been entitled to take a full FMLA day on the day she received the tardy that led to her termination. *Id.*

avoid responsibilities under FMLA."

Taking the facts in the light most favorable to Caruthers, a reasonable fact-finder could conclude that ENH's failure to notify Caruthers of the approval of her FMLA request interfered with her rights under the FMLA. There is evidence in the record from which a reasonable fact-finder could conclude that ENH did not make her aware of the approval of her request or of the fact that she could provisionally take FMLA days pending the approval of her request, that her tardiness was caused by her FMLA illness, and that she otherwise would have taken an FMLA day on each of the days in question had she known that her request had been approved. Under these circumstances, Caruthers would have been entitled to take an FMLA day on each of the days she received a tardy. Thus, Caruthers was only disciplined for her decision to come to work sick rather than stay at home. Caruthers' explanation for this decision is that, not knowing the status of her FMLA request, she feared that she would incur additional absences (which are more costly than tardies under the ENH attendance policy). It would be an anomalous result if Caruthers' tardiness, which under these circumstances would have been caused by ENH's failure to notify Caruthers of her FMLA request and would have induced her to come to work late rather than take an FMLA day, could be used to justify her termination.

ENH also makes reference to Caruthers' past attendance problems and the fact she had already exceeded the maximum number

15

of occurrences permitted under the ENH attendance policy prior to the issuance of her final corrective action. ENH, however, chose not to terminate Caruthers for these earlier problems and instead based her termination on her tardiness for days which were arguably FMLA protected. Thus, the only questions relevant to the resolution of this substantive claim are whether Caruthers was entitled to FMLA leave on these specific days and whether ENH's failure to notify her interfered with her right to take that leave. There are material issues of fact that need to be resolved in order to answer these questions. Therefore, I deny ENH's motion for summary judgment on this claim.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

DATED: October 2, 2006